**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ASTKHIK ESTOIAN,<br><br>                    Petitioner,<br><br>          v.<br><br>SECRETARY OF THE U.S. DEPARTMENT OF HOMELAND SECURITY, ET AL.,<br><br>                    Respondents. | Case No. 5:26-cv-01243-AYP<br><br>ORDER GRANTING PETITION AND ISSUING A WRIT FOR HABEAS CORPUS |

### I.    SUMMARY

Petitioner Astkhik Estoian, a citizen of Russia, is currently in the custody of the Department of Homeland Security at the Adelanto Detention Facility. (Dkt. No. 1.) Petitioner, her husband and son fled Russia and entered the United States on approximately April 13, 2024, at San Ysidro, California port of entry. *Id.* at 8. Petitioner and her family were briefly detained then

released from custody on parole for the purpose pursuing immigration relief. *Id.* at 8.

Petitioner's husband and son were both granted asylum on August 1, 2024, and Petitioner was included as a spouse derivative on her husband's I-589 application. *Id.* On March 14, 2026, the Petitioner's husband timely submitted a I-730, Refugee/Asylee Relative Petition with U.S. Citizenship and Immigration Services ("USCIS") via certified USPS mail with the Petitioner as a spouse beneficiary. *Id.* at 9. She has fulfilled the conditions of release to the best of her ability and built a life in the United States. *Id.*

Petitioner missed her September 26, 2024, master hearing due to not receiving notice. *Id.* at 8–9. The Immigration Judge ("IJ") entered a removal order *in absentia*. *Id.* at 9. Petitioner timely filed a motion to re-open and rescind the *in absentia* order and the IJ denied that motion. *Id.* The Petitioner filed an appeal with the Board of Immigration Appeals ("BIA") on March 24, 2025, for the IJ's denial of the motion to reopen and rescind *in absentia* order. *Id.* The appeal remains pending as of the date of this petition. *Id.* On approximately February 28, 2026, U.S. Department of Homeland Security ("DHS") re-arrested Petitioner in Van Nuys, California, during an ICE check-in appointment. *Id.* at 9.

Petitioner does not have any criminal convictions and has fulfilled the conditions of release set by Immigration and Customs Enforcement ("ICE"), complied with reporting requirements and followed required administrative steps for review after missing her master hearing. *Id.* at 2.

In this habeas action, Petitioner challenges her re-detention under the Immigration and Nationality Act ("INA") and the Due Process Clause. *Id.* Respondents argue that the Court does not have jurisdiction and Petitioner is subject to a final order of removal. (Dkt. No. 7.) The Court finds that

Petitioner is not subject to a final order of removal and her sudden detention—without any pre- or post-deprivation process—violated her due process rights. The Court therefore grants the Petition and issues a writ of habeas corpus requiring Petitioner's immediate release and preventing her re-detention absent pre-deprivation notice and a hearing at which the Government must justify the need to detain her with clear and convincing evidence.

## II.    FACTS AND PROCEDURAL HISOTORY

Petitioner is a citizen of Russia currently detained in civil immigration custody at Adelanto Detention Facility in Adelanto, California. (Dkt. No. 1 at 8.) Petitioner, with her husband and son, fled Russia and entered the United States on approximately April 13, 2024, at San Ysidro, CA port of entry. *Id.* Petitioner was briefly detained in Louisiana and then released on approximately May 20, 2024, on parole and relocated to greater Los Angeles area. *Id.* Following release, Petitioner completed check-ins, wore GPS monitoring devices, and completed the other conditions of release required of her. *Id.* Petitioner's husband and son were detained in Nevada throughout their removal proceedings, and Petitioner's husband and son were both granted asylum on August 1, 2024, at the Las Vegas Immigration Court. *Id.* Petitioner was included as a spouse derivative on her husband's I-589 application for Asylum and Withholding of Removal ("I-589 Application"). *Id.*

On September 26, 2024, the Petitioner was scheduled for her initial master hearing at the Los Angeles Van Nuys Boulevard Immigration Court. *Id.* Petitioner alleges she did not receive any notice of the master hearing and thus did not attend. *Id.* at 9. The Immigration Judge issued the Petitioner a Removal Order *in absentia* that same day. *Id.*

On December 24, 2024, Petitioner timely filed a motion to reopen and rescind the *in absentia* order with the Los Angles Van Nuys Boulevard Immigration Court. *Id*. On February 26, 2025, the IJ denied the Petitioner's motion to reopen and rescind *in absentia* order. *Id*. The Petitioner timely filed an appeal with the BIA on March 24, 2025, for the IJ's denial of motion to reopen and rescind *in absentia* order. *Id*. The appeal remains pending as of the date of this petition. (Dkt. No. 1-2.)

On March 14, 2026, the Petitioner's husband timely submitted a I-730, Refugee/Asylee Relative Petition with USCIS via certified USPS mail with the Petitioner as a spouse beneficiary. (Dkt. No. 1-3.) Petitioner's spouse beneficiary application is currently pending with USCIS. (Dkt. No. 1.)

On approximately February 28, 2026, DHS re-arrested Petitioner in Van Nuys, California, during an ICE check-in appointment. (Dkt. No. 1 at 9.) Following her re-arrest, Petitioner was transferred to Adelanto Detention Center in Adelanto, California, where she remains. *Id*. Prior to Petitioner's re-arrest, she did not receive written notice of the reason for her re-detention. *Id*.

Petitioner filed the instant habeas petition on March 17, 2026. (Dkt. No. 1.) Petitioner argues her re-detention and confinement violates the Immigration and Nationality Act ("INA") because she does not have a final removal order, and the Due Process Clause because the Government re-detained her without notice or an opportunity to be heard. *Id*. Respondents filed their Response on April 2, 2026, arguing that Petitioner is subject to a final order of removal and that the Court lacks jurisdiction under § 1252(g). (Dkt. No. 7.) Respondents do not address Petitioner's due process claim. *Id*. Petitioner filed a Reply on April 7, 2026. (Dkt. No. 8.)

On April 20, 2026, Respondents filed a Notice of Intended Removal of Petitioner. (Dkt. No. 12.) After reviewing the parties briefing and the Notice of

Intended Removal, on April 22, 2026, the Court Ordered "the Petitioner not to be removed from this judicial district, not to be deported or removed to the designated country of removal or any other third country until this Court addresses the issues raised in the habeas petition," and the Court ordered the parties to submit briefing in support of whether there is a final order of removal by May 1, 2026. (Dkt. No. 13.) Respondent submitted supplemental briefing on April 24. 2026. (Dkt. No. 14.) Petitioner submitted supplemental briefing on April 28, 2026. (Dkt. No. 15.) The matter is fully briefed. Both parties have consented to proceed before the Magistrate Judge. (Dkt. Nos. 9, 10.)

### III.   DISCUSSION

Petitioner argues that her ongoing confinement violates the INA and the due process clause because she does not have a final order of removal and Respondents revoked her conditional liberty and re-detained her at a routine check-in without notice, without a meaningful opportunity to be heard, and without any material change in circumstances. Petitioner therefore seeks immediate release, asserting that her re-detention lacked the constitutional safeguards required under the Fifth Amendment Due Process Clause. Respondents argue the Petitioner is subject to a final order of removal and the Court lacks Jurisdiction under 8 U.S.C. § 1252(g). Consistent with recent decisions by this district and others, the Court finds that Petitioner is not subject to a final order of removal and her sudden detention—without any pre- or post-deprivation process—violated her due process rights.

**A. The Court Has Subject Matter Jurisdiction.**

The Court begins by addressing Respondents' argument that the federal courts lack subject matter jurisdiction over Petitioner's habeas claims.

5

Petitioner seeks habeas relief pursuant to 28 U.S.C. § 2241. Section 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C. § 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention." *Id*. (citing *INS v. St. Cyr*, 533 U.S. 289, 301-03 (2001)). Petitioner here advances a paradigmatic habeas claim—that her confinement by federal immigration authorities violates the Due Process Clause and a federal law.

Respondents argue that Congress stripped the federal courts' habeas jurisdiction over claims like Petitioner's through one provision of the immigration laws, 8 U.S.C. § 1252(g). (Dkt. No. 7 at 4–5.) However, as courts in this district have found, Respondents' arguments cannot be reconciled with Supreme Court and Ninth Circuit authority. *See, e.g., Hernandez Cruz v. Noem*, No. 8:25-cv-02566-SB-MAA, 2025 WL 3482630, at *1–2 (C.D. Cal. Dec. 2, 2025); *Altamirano Ramos v. Lyons*, No. 2:25-cv-09785-SVW-AJR, 2025 WL 3199872, at *2–3 (C.D. Cal. Nov. 12, 2025).

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders . . . " 8 U.S.C. § 1252(g). "The Supreme Court has instructed that we should read § 1252(g) narrowly." *Ibarra-Perez v. United States*, 154 F.4th 989, 991 (9th Cir. 2025) (citing *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020)). Section 1252(g) thus applies only to "those three specific actions themselves." *Id*. at 996.

Respondents argue that § 1252(g) applies to any cause or claim arising from the decision of the Attorney General to, among other things, "execute

removal orders." (Dkt. No. 7 at 4.) But the Supreme Court has refused to "interpret [§ 1252(g)'s] language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality) (citing *Reno v. American-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 482–83 (1999)). Rather, it has construed § 1252(g) to apply to the "particular evil" it was directed against: "attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9. Petitioner's claims challenge her detention, not the Government's "prosecutorial discretion" to commence proceedings, adjudicate cases, or execute removal orders.

Nor does § 1252(b)(9) apply to Petitioner's habeas claims. Section 1252(b)(9) only applies to federal habeas corpus jurisdiction over "final orders of removal." *Nadarajah v. Gonzales*, 443 F.3d 1069, 1075–76 (9th Cir. 2006). Thus, by its terms, the jurisdiction-stripping provision does not apply to federal habeas corpus petitions that do not involve final orders of removal and jurisdiction remains in the district court. *Id.* Section 1252(b)(9) funnels "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken ... to remove an alien" into the procedures for review of final orders of removal—namely, petitions for review in the circuit courts. 8 U.S.C. § 1252(b)(9). Consistent with its construction of § 1252(g), the Supreme Court has rejected an "expansive interpretation of" § 1252(b)(9) that would apply to any claims that might conceivably "aris[e] from" immigration enforcement. *Jennings*, 583 U.S. at 293 (plurality). Among other problems, such an interpretation would render detention claims "effectively unreviewable" because, "[b]y the time a final order of removal was eventually entered, the

allegedly excessive detention would have already taken place." *Id*. Section 1252(b)(9) does not preclude this Court from considering Petitioner's claims.

Respondents are correct that this Court does not have authority to review the merits of a removal order. *See Flores-Torres v. Mukasey*, 548 F.3d 708, 710 (9th Cir. 2008) ("[T]he exclusive method for obtaining judicial review of 'a final order of removal' is through filing a petition for review in the court of appeals.") However, this Court does have authority to review the threshold question of whether a final order of removal exists at all. The Ninth Circuit in *Flores-Torres* also stated, "the jurisdiction-stripping provision [of the REAL ID Act] does not apply to federal habeas corpus petitions that *do not* involve final orders of removal." *Flores-Torres v. Mukasey*, 548 F.3d 708, 711 (9th Cir. 2008) (emphasis added). Where the existence of a final order of removal is a genuine question, the district court must entertain the habeas petition. *Id*.

Petitioner argues her custody is unlawful because she does not have a final order of removal. Respondents argue that she does have a final order of removal. The existence of a final removal order is integral in determining whether her detention is authorized. If there is not a final order of removal, then detention is not authorized by § 1231. 8 U.S.C. § 1231.

Thus, the court has jurisdiction to review.

**B. Petitioner's *In Absentia* Order is Not a Final Order of Removal**

The Court finds that Petitioner's *in absentia* removal order is not a final order of removal until the BIA affirms the order because she timely appealed the order within the permitted period.

"A removal order becomes administratively final," *Ying Jiao Ye v. Nordheim*, No. 218CV10072JVSKES, 2019 WL 95503, at *2 (C.D. Cal. Jan. 3, 2019), upon the earlier of "(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the

alien is permitted to seek review of such order by the Board of Immigration Appeals" 8 U.S.C. § 1101(a)(47)(B).

Section 1229 allows an alien to file a motion to seek review and to reopen an *in absentia* order within "within 180 days after the date of the order of removal." 8 U.S.C. § 1229(a)(5)(C).

First, Petitioner here sought review, timely. The IJ issued Petitioner's order of removal *in absentia* on September 26, 2024. (Dkt. No. 1. at 8–9.) Petitioner then filed a motion with the IJ to reopen and rescind the *in absentia* order on December 24, 2024—eighty-nine days after the *in absentia* order. (Dkt. No. 1 at 9.) On February 26, 2025, the IJ denied the Petitioner's motion to reopen and rescind *in absentia* order. *Id*. Then, Petitioner timely filed an appeal to the BIA on March 24, 2025—179 days after the date of the order of removal—for the IJ denial of motion to reopen and rescind *in absentia* order. Both the motion to the IJ and the appeal to the BIA were within the 180-day timeframe in § 1229(a)(5)(C) that allows review of the *in absentia* order. Second, the BIA has not ruled on the appeal. Thus, pursuant to 8 U.S.C. § 1101, there is no final order of removal.

The Code of Federal Regulation, § 1241.1, states that an order of removal shall become final "[u]pon dismissal of an appeal by the Board of Immigration Appeals" or "[i]f an immigration judge orders an alien removed in the alien's absence, immediately upon entry of such order." This regulation conflicts with 8 U.S.C. § 1101's definitions. If a petitioner files an appeal with the BIA for an *in absentia* order, and the BIA reverses, then the IJ's *in absentia* order of removal was not in fact final.

This Court agrees with the Ninth Circuit and other District Courts and recognizes that "because Petitioner was ordered removed *in absentia*, … [her] removal order will not become final until the BIA adjudicates [her] appeal of

the IJ's order denying his motion to reopen, and the Ninth Circuit resolves any subsequent appeal." *Rahmani v. Bondi*, No. C26-362-KKE, 2026 WL 638364, at *2 (W.D. Wash. Mar. 6, 2026)*; see Cui v. Garland*, 13 F.4th 991, 996 (9th Cir. 2021) (holding that an in absentia removal order becomes final upon the expiration of the time to file a motion to reopen or upon a decision by the BIA denying such a motion or affirming the removal order); *see also Guifarro-Aceituno v. Garland,* No. 20-72976, 2024 WL 5199338, at *1 (9th Cir. Dec. 23, 2024) (finding the removal order became final when the BIA affirmed the IJ's *in absentia* removal order); *Elgharib v. Holder*, No. 09-3012, 2009 WL 9120638, at *1 (6th Cir. Mar. 31, 2009) (finding that after the petitioner did not appeal either the *in absentia* order of removal or the IJ denial of her motion to reopen to the BIA, the *in absentia* order of removal became a final order of removal); *N.Y.F.S. v. Bondi*, No. 2:25-CV-02556-LK, 2026 WL 91889, at *4 (W.D. Wash. Jan. 13, 2026) (noting Petitioner's order of removal, which was issued *in absentia*, became administratively final once the 180 day period lapsed); *Ho v. Noem*, No. C25-2222-RSM-MLP, 2025 WL 3466923, at *2 (W.D. Wash. Nov. 24, 2025), *report and recommendation adopted,* No. C25-2222-RSM, 2025 WL 3471855 (W.D. Wash. Dec. 3, 2025) ("An IJ's removal order does not become administratively final until it is affirmed by the BIA.").

As petitioners *in absentia* appeal is still pending with the BIA, the Court finds that petitioner is not subject to a final order of removal.

## C. Respondents Lack Authority to Remove a Noncitizen Absent a Final Order of Removal

Furthermore, a person may not be removed where the removal order is not administratively final. *League of United Latin Am. Citizens v. Wilson*, 908 F. Supp. 755, 777 (C.D. Cal. 1995), *on reconsideration in part,* 997 F. Supp.

1244 (C.D. Cal. 1997) (finding that only "after a 'final order' of deportation issues," may the Attorney General effect the alien's departure from the United States); *Argueta-Anariba v. Recktenwald*, No. 14 CIV. 7847 LGS, 2014 WL 5644178, at *3 (S.D.N.Y. Nov. 4, 2014) ("A person must be subject to a final order of removal by the Immigration and Customs Enforcement Agency in order to be a deportable alien."); *c.f. Bean v. Barber*, 163 F. Supp. 111, 113 (N.D. Cal. 1958) ("[P]laintiff is entitled to remain in this country absent legal and appropriate steps to deport him."). Petitioner's appeal remains pending, there is no final order of removal, thus Respondents lack the authority to execute removal. *See* 8 C.F.R. § 1241.1; *see also Lopez-Angel v. Barr*, 952 F.3d 1045, 1049 (9th Cir. 2019) ("The statutory right [to appeal an immigration judge's removal decision] would be undermined if the government could simply terminate an appeal by removing a petitioner."); *Aguirre Solis v. Noem*, No. 2:26-CV-00053-RFB-EJY, 2026 WL 396432, at *4 (D. Nev. Feb. 12, 2026).

Additionally, as there is no final order of removal, the removal period has not commenced. The removal period only begins on whichever is later, either: (i) the date the removal order becomes administratively final; or (ii) the date of a Court's final order, if on judicial review there is stay. 8 U.S.C. § 1231(a)(1)(B).

While Respondents maintain throughout their responses that Petitioner is subject to a final order of removal, there is no dispute that Petitioner's appeal of the IJ order remains pending with the BIA. The record and law are therefore clear that Petitioner is not yet subject to a final order of removal and, thus, is not subject to mandatory detention under § 1231(a) at this time.[1]

---

[1] Of note, Petitioner has a spouse beneficiary asylum application pending with USCIS. If that application is granted, "Petitioner's asylum application would be a complete defense to removal." *Lett v. Decker*, 346 F. Supp. 3d 379, 388 (S.D.N.Y. 2018), *vacated and remanded,* No. 18-3714, 2020 WL 13558956 (2d Cir. July 30, 2020); *see Elzour v. Ashcroft*, 378 F.3d 1143, 1148 (10th Cir. 2004) ("An alien who

**D. Petitioners' Ongoing Detention Violates Due Process**

The Court now turns to Petitioner's due process claim.

Respondents' choice to not oppose Petitioner's claims in their Answer and Supplemental briefing is in effect a concession that the Petition should be granted. (Dkt. Nos.7, 14.) Thus, the Court considers the issue waived. *See Singh v. Warden Desert View Annex, et al.*, No. 26-cv-00440-FMO-AJR, Dkt. 9 (C.D. Cal. Feb. 9, 2026) (granting petition where "the court construes respondents' failure to address petitioner's due process claim as a concession of petitioner's argument"); *Soleimani v. Larose*, No. 25-cv-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting petition because, "[b]y failing to respond to the claims actually asserted, Respondents have conceded the claims"). *See also N-E-M-B v. Wamsley*, No. 3:25-cv-989-SI, 2025 WL 3527111, at *1 (D. Or. Dec. 9, 2025) ("Respondents do not challenge any aspect of the Petition on the merits and thus the Court finds that Respondents have waived such challenges and conceded those aspects of the Petition.").

Regardless, even if Respondents had not conceded the issue, the Court would grant the Petition on the merits of Petitioners' due process claim. A growing body of decisions in this District and across the Ninth Circuit— including by the undersigned Magistrate Judge—have found that immigration authorities violated or likely violated due process by re-detaining noncitizens who had been released shortly after their entry to the United States without notice or an opportunity to be heard. *See M.V.F. v. Santacruz*, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen who had been released on their own

has been granted asylum may not be deported or removed unless his or her asylum status is terminated." (citing 8 C.F.R. § 208.22)).

12

recognizance shortly after entering the United States and was re-arrested at ICE check-in). *See also Bozoian, v. Warden-Facility Admnistrator, et al.*, No. 5:26-CV-01727-AYP, 2026 WL 1195998, at *3 (C.D. Cal. Apr. 24, 2026) (granting petition for noncitizen who had been released on parole after entry into the United States and was re-arrested by ICE); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in); *Cruz v. Lyons, et al.*, No. 5:25-cv-02879-MCS-MBK (C.D. Cal. Nov. 6, 2025) at Dkt. 12 (granting TRO ordering release of noncitizen who had been paroled into the United States and was re-arrested at appointment with United States Citizenship and Immigration Services).

"Freedom from imprisonment from government custody, detention, or other forms of physical restraint-lies at the heart of the liberty protected by the Due Process Clause." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Consistent with this principle, individuals released on parole or other forms of conditional release have a liberty interest in their "continued liberty." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

The Fifth Amendment protects all persons in the United States, including noncitizens in removal proceedings, from deprivation of liberty without due process of law. Freedom from physical restraint lies at the core of this protection. *Saravia v. Sessions* reaffirmed this principle in the context of immigration re-detention: once the government has made a prior release determination, it cannot later re-detain the individual without evidence of materially changed circumstances and without providing prompt, adequate

13

process before depriving the person of liberty. 280 F. Supp. 3d 1168, 1194–98 (N.D. Cal. 2017).

Read together with the recent decisions in this District addressing sudden re-detention of compliant noncitizens, these authorities underscore the principle that where a noncitizen has lived in the community under parole or supervision-based release and has remained fully compliant, the Government may not revoke that conditional liberty without first affording constitutionally sufficient pre-deprivation process or identifying a material intervening change in circumstances.

As in these cases, the Court considers Petitioner's procedural due process claim under the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

### 1.    Private Interest

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining her life out of custody. While Petitioner has remained subject to supervision following her releases in 2024, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles [her] to constitutional due process before [s]he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioner's release included "an implicit promise that parole will be revoked only if [s]he fails to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482

(1972). This conditional liberty is "'valuable and must be seen as within the protection of the Fourteenth Amendment.'" *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

The Petitioner has resided in the United States for almost two years before her recent re-detention. As her circumstances illustrate, a person can develop meaningful ties in such a relatively short period of time. Following her release from immigration custody, Petitioner has resided and built a life in the United States with her husband and son, who were granted asylum. (*See* Dkt. No. 1 at 2, 3, 8, 9.) While individuals apprehended shortly after entry in the United States may have "a lesser liberty interest" "at the margin" than other noncitizens who have resided in the United States for decades, "the same important interest is at stake—freedom from prolonged detention." *Diouf v. Napolitano*, 634 F.3d 1081, 1086-87 (9th Cir. 2011), *overruled on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022).

Consistent with this conclusion, multiple courts have found that noncitizens developed protectable liberty interests in their release from immigration custody for periods comparable to those at issue here. *See, e.g.*, *Clene C. D. v. Robbins*, No. 1:25-CV-01463-KES-SKO, 2025 WL 3492118, at *5 (E.D. Cal. Dec. 4, 2025) (finding a petitioner had a constitutionally protected liberty interest in "eleven months she spent at liberty" following release under Section 1226(a)); *Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to petitioner released for "over two years" under Section 1226(a)); *Pinchi*, 792 F. Supp. 3d at 1034 (same, for petitioner released "over two years" under Section 1226(a)); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321–22 (W.D. Wash. 2025) (same, petitioner released for approximately 21 months under Section

15

1226(a)).

The Court therefore concludes that the Due Process Clause protects Petitioner's substantial liberty interest in maintaining her freedom from confinement.

### 2.    Risk of Erroneous Deprivation

With respect to the second *Mathews* factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive— or already has erroneously deprived—Petitioner of her liberty interest absent a pre-detention hearing." *Cruz*, No. 5:25-cv-02879, Dkt. 12 at 7. The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). But Petitioner has not been afforded any process to determine whether her detention in fact advances either purpose.

The record suggests that Petitioner is not a flight risk or danger. Petitioner's initial release from custody "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at \*6 (C.D. Cal. Aug. 26, 2025) (citation omitted). On May 20, 2024, Petitioner was released from custody on parole.[2] (Dkt. No. 1 at 8.) Under Section 1226's implementing regulations, the Government may order such release "provided that the alien [] demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F.

---

[2] Declaration of Evelyn Lajuj indicates that Petitioner was released pursuant to an Order of Recognizance ("OREC") on May 20, 2024. (Dkt. No. 7-1 ¶ 10.)

Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Since her release, Petitioner has not given any reason to think that the Government's initial determination was in error. Petitioner complied with her conditions of supervision, including by reporting for regular check-ins with ICE and wearing GPS monitoring devices. She has had no criminal arrests or convictions during her time in the United States. Further, her husband and son have both been granted asylum in the United States. She was listed as a spouse derivative on her husband's I-589 form and resides in the United States, indicating that she has strong ties and is not a flight risk. Based on this record, the Court concludes that there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioners in fact present a danger or flight risk—has resulted in Petitioners' unnecessary detention.

### 3.    Government Interest

As to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously" released noncitizens like Petitioner "without a pre-detention hearing." *Cruz*, 2025 WL 4051129, at *4 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In

17

immigration court, custody hearings are routine . . . ." *Singh v. Andrews,* 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in her unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Government's re-detention of Petitioner without adequate pre-deprivation process violated due process. Accordingly, the Court orders Petitioner forthwith released and prevents her re-detention absent pre-deprivation notice and a hearing at which the Government must justify the need to confine her.

## IV.    CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner's immediate release, subject to pre-detention conditions, and preventing her re-detention absent constitutionally adequate pre-deprivation notice and a hearing at which the Government must justify the need to confine her; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody.

IT IS SO ORDERED.

Dated: May 11, 2026

_____
HON. ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE

18